JOHN W. HUBER, United States Attorney (#7226)
JARED C. BENNETT, Assistant United States Attorney (#9097)
185 South State Street, #300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Jared.Bennett@usdoj.gov

MARCIA BERMAN
ELIZABETH L. KADE (D.C. Bar #1009679)
U.S. Department of Justice, Civil Division
20 Massachusetts Ave., N.W.
Washington, DC 20530
Telephone: (202) 616-8491
Elizabeth.L.Kade@usdoj.gov

Attorneys for Defendants

_____

### IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
### CENTRAL DIVISION
_____

| | |
|---|---|
| CENTER FOR EXCELLENCE IN HIGHER EDUCATION, | Case No. 2:16-CV00911-CW |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD** |
| vs. | |
| BETSY DeVOS, *et al.*, | District Court Judge Clark Waddoups |
| Defendants. | Magistrate Judge Dustin B. Pead |

_____

Plaintiff's motion to complete and supplement the Administrative Record should be denied. Plaintiff Center for Excellence in Higher Education ("CEHE") has brought claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, challenging as arbitrary and capricious the August 11 and December 22, 2016, decisions of the U.S. Department of Education ("Department") to deny CEHE's applications to participate in federal student aid programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended ("HEA"), as

nonprofit institutions.  The Department filed its certified Administrative Record of the documents directly or indirectly considered by the agency decisionmakers on August 7, 2017.  *See* AR, ECF No. 50.  Absent clear evidence to the contrary, the agency is presumed to properly designate the Administrative Record.  Defendants agree that the versions of the electronic applications for change of ownership listed at Plaintiff's Ex. A, Item Nos. 5–8 should replace the versions of these electronic applications originally included in the Administrative Record at 461–470 and 775–796.  Plaintiff, however, also asks the Court to expand the Administrative Record to include certain correspondence between CEHE and the Department, Department websites that listed the colleges that were the subject of the applications as "nonprofits," and evidence of the Department's recent decisions addressing nonprofit conversion that Plaintiff believes could show the Department treated CEHE differently than similarly situated institutions.  Because these materials were not directly or indirectly considered by the decisionmakers in reaching the challenged decisions, and they do not meet the high bar for consideration as extra-record evidence, Plaintiff's motion should be denied.

## FACTUAL BACKGROUND

In January 2013, Plaintiff submitted electronic applications to the Department for approval of a change in ownership or structure for Stevens Henager College, CollegeAmerica Denver, CollegeAmerica Arizona, and California College San Diego ("the Colleges"), following the December 27, 2012 merger of the Colleges into CEHE.  The Colleges had been proprietary, for-profit institutions before the merger.  *See* AR at 1–2, 24.  CEHE is an IRS-recognized 501(c)(3) tax-exempt nonprofit organization.  *Id*.  It sought to have the Colleges that it acquired converted to nonprofit status and participate in federal student aid programs as nonprofit

institutions.[1]  *Id*.  Over the next 3.5 years, the Department worked to evaluate Plaintiff's applications and periodically requested additional materials necessary for the Department's evaluation process.  *See* AR at 797–2363.  During the pendency of Plaintiff's applications, the Colleges operated under temporary Provisional Program Participation Agreements.  *See* AR at 1–2.  On August 11, 2016, the Department granted Plaintiff's applications for change of ownership and denied Plaintiff's applications to participate in the Title IV, HEA programs as nonprofit institutions.  AR at 1–11.

The Department provided Plaintiff with a thorough explanation of the reasons for its decision supported by the pertinent provisions of the HEA and its implementing regulations.  *See* 34 C.F.R. § 600.2 (defining a nonprofit institution as one that, among other requirements, "[i]s owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder or individual"); 34 C.F.R. § 600.20 (setting forth procedures for establishing institutional eligibility and certification); 34 C.F.R. § 600.31 (providing that private nonprofit, private for-profit, and public institutions must reestablish eligibility following a change in ownership resulting in a change in control).  The Department ultimately determined that the Colleges did not meet the definition of "nonprofit" set forth in 34 C.F.R. § 600.2 because of the structure of the merger transaction and the continuing control over the Colleges by Carl Barney—whose living trust was the former owner of the Colleges—following the transaction.  AR at 1–11.

On August 21, 2016, Plaintiff submitted a request for reconsideration of the Department's August 11, 2016, denial.  AR at 2367–2477.  The Department requested additional information

---

[1] Before the merger transaction, the Colleges submitted pre-acquisition review requests for feedback on its upcoming merger transaction to the Department.  The Department provided feedback on December 20, 2012, that the merger would result in the Colleges' conversion to nonprofit status.  *See* Compl. ¶¶ 44–53, ECF No. 2.

and documents from Plaintiff in September 2016 in order to evaluate this request for reconsideration. AR at 2478–2777. On December 22, 2016, the Department issued a final decision denying Plaintiff's reconsideration request to recognize the Colleges as nonprofit institutions. AR at 23–34.

After considering and addressing Plaintiff's arguments and additional documentation, the Department ultimately determined that the Colleges still did not meet the definition of "nonprofit" set forth in 34 C.F.R. § 600.2. AR at 23–34. The Department noted that in prior years, it had "primarily depended on the state approval and the IRS's designation of the owner's tax exempt status in determining whether an institution qualified for nonprofit status under the HEA and the Department's regulations." AR at 25. But the Department believed that proprietary institutions "may have greater incentives to convert to a non-profit status that exempts degree programs from the gainful employment requirements" after these additional regulatory requirements were established, so the Department "determined that a more detailed examination of an institution [wa]s needed before approving it for non-profit status." *Id*.

In examining Plaintiff's applications, the Department engaged in a fact-intensive review of "the structure of the transaction, the financing of the transaction, the value of the transaction, and the governance of the nonprofit entity" in order to evaluate each "institution's ownership, its operation and control, and who reaps the financial benefit from [each] institution's operation." AR at 26. Because the merger transaction resulted in continued financial benefit to Mr. Barney and the Carl Barney Living Trust—the former owner of the Colleges—and because of Mr. Barney's significant control over CEHE, the Department determined that the Colleges were not "owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder or individual" as set forth in 34 C.F.R. § 600.2. AR at 23–34. The Department noted that "[t]he status of the Colleges can be re-

4

examined when [they] apply for recertification at the end of the provisional participation agreements, and changes in the relationship and agreements between Mr. Barney and CEHE during the intervening period may lead to a different determination in the future." AR at 34.

In the instant motion, Plaintiff is seeking to supplement the Administrative Record with extra-record evidence that Plaintiff imagines exists showing "that the Department treated CEHE differently than similarly situated parties." Pl.'s Objections to the Admin. R. and Mot. to Complete and Suppl. the Admin. R. at 12, ECF No. 57 ("Pl.'s Mot."). In reaching its final decision, the Department addressed Plaintiff's allegations of bias and distinguished instances in which the Department had "approved other conversions where the former for-profit owner 'remained involved,'" and other nonprofit institutions that hold tax-exempt bonds as debt. AR at 24, 32 & nn.6, 8. Plaintiff is now seeking to include additional extra-record evidence of disparate treatment of CEHE, Pl.'s Mot. Ex. A, Item Nos. 38–39, 47, but has failed to demonstrate a "strong showing" of improper behavior in development of the record or how additional examples of the Department's other decisions addressing nonprofit conversion are necessary for effective judicial review of the challenged decisions here.

Plaintiff is also seeking to include the Colleges' November 2012 pre-acquisition review requests for feedback on its upcoming merger transaction, *id.* at Ex. A, Item Nos. 1–4, and related pre-acquisition review correspondence with the Department, *id.* at Ex. A, Item Nos. 9–12. In addition, Plaintiff argues that post-transaction communications and websites "referencing the Colleges' nonprofit status" should be included in the Administrative Record because they "provide[] further circumstantial proof of the Colleges' nonprofit status." Pl.'s Mot. at 10; *id.* at Ex. A, Item Nos. 13–37, 40–46, 48–50. Plaintiff has not demonstrated that these documents were even indirectly considered by the agency decisionmakers in reaching the decisions at issue

in this litigation.  Thus, Plaintiff has not overcome the presumption that the Department properly designated the Administrative Record.  Plaintiff's motion should be denied.

## LEGAL STANDARD

When a case is brought under the APA, judicial review of the agency's action is generally limited to the record before the agency at the time the challenged action was taken.  *See* 5 U.S.C. § 706; *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *see also Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990) ("Judicial review of administrative action should normally be based on the full administrative record that was before the decisionmaker at the time [the] challenged action was taken . . . .").  This administrative record "includes all materials compiled by the agency that were before the agency at the time the decision was made."  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citations omitted) (quoting *Overton Park*, 401 U.S. at 419).  That entails including "all documents and materials directly or indirectly considered by the agency."  *Bar MK Ranches v. Yeutter*, 994 F.2d 735, 739 (10th Cir. 1993); *see also Am. Wild Horse Pres. Campaign v. Salazar*, 859 F. Supp. 2d 33, 41 (D.D.C. 2012).  "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

The agency's designation of the administrative record is entitled to a "presumption of administrative regularity."  *Bar MK Ranches*, 994 F.2d at 740 (citing *Wilson v. Hodel*, 758 F.2d 1369, 1373–74 (10th Cir. 1985)).  Absent "clear evidence" to the contrary, the court assumes the agency properly designated the administrative record.  *Id.*; *see also Wilson*, 758 F.2d at 1374 ("In the absence of clear evidence to the contrary, courts presume that public officers have properly discharged their official duties") (quoting *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926)); *Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5

(D.D.C. 2006) ("[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record."); *accord Overton Park*, 401 U.S. at 415 ("[T]he Secretary's decision is entitled to a presumption of regularity."). Because "it is the agency that did the 'considering,'" the agency "is in a position to indicate initially which of the materials were 'before' it – namely, were 'directly or indirectly considered.'" *Pac. Shores Subdivision*, 448 F. Supp. 2d at 5 (citations omitted).

As the *WildEarth* court noted, introduction of additional documentation and evidence in a record review case:

> generally takes two distinct, yet often confused, forms: (1) materials which were actually considered by the agency, yet omitted from the administrative record ("completing the record"); and (2) materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry ("supplementing the record").

*WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1252–53 (D. Colo. 2010). Under this formulation, Plaintiff here seeks both to "complete the record" with communications and websites it asserts were in the possession of the agency decisionmakers at the time they made the challenged decisions, Pl.'s Mot. at 9–11, and to "supplement the record" with "documents that help explain CEHE's challenge" to the decisions in this litigation, *id.* at 11–12.

A plaintiff may rebut the presumption of a complete record only with "clear evidence that the record fails to include documents or materials considered by [the agency] in reaching the challenged decision." *WildEarth Guardians*, 713 F. Supp. 2d at 1253. This burden cannot be met by simply "asserting, speculatively, that documents were relevant or before the agency at the time it made its decision." *Id*. at 1254 (adopting the clear evidence burden set forth in *Pacific Shores Subdivision*, 448 F. Supp. 2d at 6–7). In order to supplement the record, Plaintiff must "overcome the presumption of regularity," or make "a 'strong showing' of improper behavior in

7

development of the record." *Citizens for Alts. to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1097 (10th Cir. 2007).

## ARGUMENT

**I.   THE ADMINISTRATIVE RECORD SHOULD BE CORRECTED TO INCLUDE THE SUBMITTED VERSIONS OF THE ELECTRONIC APPLICATIONS FOR CHANGE OF OWNERSHIP**

Defendants agree that the versions of the Colleges' electronic applications for change of ownership listed at Plaintiff's Ex. A, Item Nos. 5–8 should replace the versions of the College's electronic applications originally included in the Administrative Record at 461–470 and 775–796. The government's electronic application system captures applications and date stamps them as of the date they are printed—here, August 12, 2016—instead of capturing and date stamping applications as they are submitted to the Department. Plaintiff's proposed corrected versions of these applications appear to accurately represent what was originally submitted to the Department's electronic application system. Defendants respectfully request 7 days from the date of the Court's decision on Plaintiff's instant motion to Bates stamp and lodge this corrected Administrative Record with the Court.

**II.  THE REMAINING DOCUMENTS PLAINTIFF CONTENDS WERE IMPROPERLY OMITTED FROM THE ADMINISTRATIVE RECORD WERE NOT DIRECTLY OR INDIRECTLY CONSIDERED BY THE AGENCY DECISIONMAKERS**

In contrast to the electronic applications, the rest of the material that Plaintiff seeks to "complete" the Administrative Record with was not directly or even indirectly considered by the agency decisionmakers in reaching the decisions at issue in this litigation. As noted above, to complete an administrative record, a plaintiff must overcome the "strong presumption that an agency has properly compiled the entire record of materials that it considered, either directly or indirectly, in making its decision" by "put[ting] forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Tindal v. McHugh*, 945 F.

Supp. 2d 111, 123 (D.D.C. 2013) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)).  The plaintiff "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record."  *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008) (quoting *Pac. Shores*, 448 F. Supp. 2d at 6).  Plaintiff has not overcome the presumption that the Department properly designated the Administrative Record of the challenged agency decisions here, and Plaintiff's request to "complete" the record with these documents should be denied.

> **A.    Pre-application communications that were not indirectly or directly relied upon in reaching the challenged decisions should not be included.**

Plaintiff is seeking to include the Colleges' November 2012 pre-acquisition review requests for feedback on its upcoming merger transaction, Pl.'s Mot. at Ex. A, Item Nos. 1–4, and related pre-acquisition review correspondence with the Department, *id*. at Ex. A, Item Nos. 9–12.  But the record does not include "every scrap of paper that could or might have been created" on a subject.  *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002); *see also WildEarth Guardians*, 713 F. Supp. 2d at 1255 ("The chain of indirect consideration cannot, however, reach *all* documents within the agency.").  Plaintiff has not challenged the Department's December 20, 2012 response to these requests or even alleged that this response is a final agency decision capable of review under the APA.  This pre-acquisition review was not part of the application process for the Department's final decision at issue in this litigation.  In addition, as Plaintiff notes, Pl.'s Mot. at 9, Mr. Barney's continued role in CEHE and the financial structure of the transaction were factors in the Department's decision and the information relied upon by the Department concerning these factors is already in the record.  Documents related to the Department's pre-acquisition review therefore should not be included in the Administrative Record as materials that were directly or indirectly considered by the decisionmakers to the challenged decisions.

>   B.    **Post-application communications that "passed before the eyes" of the decisionmakers but were not indirectly or directly considered in reaching the challenged decisions should not be included.**

Plaintiff asserts that post-transaction communications and websites "referencing the Colleges' nonprofit status" should be included in the Administrative Record because they "provide[] further circumstantial proof of the Colleges' nonprofit status." Pl.'s Mot. at 10–11; *id*. at Ex. A, Item Nos. 13–37, 40–46, 48–50.  However, Plaintiff does not allege that these communications and websites were directly or indirectly considered by the officials who issued the decisions. *See Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) ("It is not enough for the plaintiffs to assert that the [agency] knew about these documents; rather, the plaintiffs must offer non-speculative grounds for their belief that the agency *actually considered* the documents in question." (emphasis in original)).  These materials were not included in the record because they were not "directly or indirectly considered by the decision-maker[s]," *Pac. Shores Subdivision*, 448 F. Supp. 2d at 2, and they therefore should not be included now.

Plaintiff hangs its request on the fact that the communications "literally passed before the eyes" of the agency decisionmakers. Pl.'s Mot. at 10 (citing *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010)).  This is not what "directly or indirectly considered" means.  Indeed, while "a court may be tempted to allow inclusion in the record of any relevant document contained in an agency's file cabinets, reasoning that some agency staff considered these documents at some point," "[s]uch a broad interpretation of 'indirectly considered'" would "fail[] to give appropriate deference to the agency's designation of the record." *WildEarth Guardians*, 713 F. Supp. 2d at 1255.

"The proper touchstone remains the decision makers' actual consideration, and a party moving to complete the record must show with clear evidence the context in which materials were considered by decision makers in the relevant decision making process." *Ctr. for Native*

10

*Ecosystems*, 711 F. Supp. 2d at 1276; *see also WildEarth Guardians*, 713 F. Supp. 2d at 1256. Although Plaintiff believes these communications are "circumstantial proof of the Colleges' nonprofit status following the transaction," Plaintiff fails to demonstrate that the "discuss[ions] and express[] references [to] the Colleges' nonprofit status" in these communications were relevant to the agency decisionmakers' decisions that the Colleges did not meet the definition of "nonprofit" set forth in 34 C.F.R. § 600.2. *See* Pl.'s Mot. at 10. Plaintiff similarly fails to demonstrate that "Department-operated, consumer-facing websites that identified the Colleges as nonprofit institutions" were relevant to these determinations. *Id*. at 11.

Plaintiff fails to give any basis for its claim that the decisionmakers considered these communications or websites in making the challenged determinations. Simply "asserting, speculatively, that documents were relevant or before the agency at the time it made its decision," *WildEarth Guardians*, 713 F. Supp. 2d at 1254, is insufficient. Plaintiff has not made the requisite showing necessary to rebut the presumption that the Department's certified Administrative Record is full and complete, and as such Plaintiff's motion to complete the record with post-transaction communications and websites "referencing the Colleges' nonprofit status" should be denied.

### III. PLAINTIFF'S REQUEST FOR SUPPLEMENTATION OR CONSIDERATION OF EXTRA-RECORD EVIDENCE SHOULD BE DENIED BECAUSE PLAINTIFF CANNOT SHOW THE REQUIRED NARROW CIRCUMSTANCES

Plaintiff's request that this Court supplement the Administrative Record with extra-record evidence that Plaintiff imagines shows "that the Department treated CEHE differently than similarly situated parties" also should be denied. Pl.'s Mot. at 12; *id*. at Ex. A, Item Nos. 38–39, 47. In the Tenth Circuit, a reviewing court can go outside the administrative record to "'consider evidence relevant to the substantive merits of the agency action only for background information,'" *Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 791 n.3 (10th Cir. 2010) (quoting

11

*Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980)), when the agency ignored relevant factors, considered factors not in the record, or when there is a "strong showing of bad faith or improper behavior," *Citizens for Alts.*, 485 F.3d at 1096.  *See also Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1278–79 (discussing conflicting Tenth Circuit authority).  Plaintiff "has not overcome the presumption of regularity, nor made a 'strong showing' of improper behavior in development of the record."  *Citizens for Alts.*, 485 F.3d at 1097.

Plaintiff argues that "extra-record evidence is often necessary to enable meaningful judicial review," Pl.'s Mot. at 11, but Plaintiff does not allege that the Administrative Record is so bare that it prevents effective judicial review.  *See Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514–15 (D.C. Cir. 2010).  A court may resort to considering extra-record evidence in order to "help the court to determine whether the administrative record is deficient in the first place."  *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014).  "But even then, the exception 'at most . . . may be invoked to challenge *gross procedural deficiencies*—such as where the administrative record itself is so deficient as to preclude effective review.'"  *Id.* (quoting *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (per curiam) (emphasis in original)).  The Administrative Record here cannot possibly be labeled "bare," where the Department's decisions denying Plaintiff's applications to participate in the Title IV, HEA programs as nonprofit institutions thoroughly explain the underlying reasons.  *See* AR at 1–11, 23–34.  Plaintiff also has no evidence of gross procedural deficiencies in the Department's decisions at issue.

Plaintiff here, like the plaintiffs in *Citizens*, has "made nothing more than a speculative claim uncorroborated by evidence of wrongdoing."  *Citizens for Alts.*, 485 F.3d at 1097.  Conclusory statements "fall far short of the 'strong showing' of bad faith required to justify

supplementing the record." *James Madison Ltd.*, 82 F.3d at 1095 (quoting *Overton Park*, 401 U.S. at 420).

In addition, Plaintiff here, like the plaintiffs in *Citizens*, has "fail[ed] to demonstrate the independent significance of the [materials it is seeking to supplement into the record] or how [these materials] decisively undercut[] the entire volume of [materials] considered by [the agency]." *Citizens for Alts.*, 485 F.3d at 1097. As Plaintiff notes, the Administrative Record already includes evidence about "related transactions" that CEHE submitted with its request for reconsideration and that the Department directly or indirectly considered in reaching its final decision on that request. Pl.'s Mot. at 13–14. The Department's denial decision squarely addressed Plaintiff's allegations of bias and distinguished instances in which the Department had "approved other conversions where the former for-profit owner 'remained involved,'" and other nonprofit institutions that hold tax-exempt bonds as debt. AR at 24, 32 & nn.6, 8. The denial decision also expressly acknowledges that in prior years, the Department had "primarily depended on the state approval and the IRS's designation of the owner's tax exempt status in determining whether an institution qualified for nonprofit status under the HEA and the Department's regulations." AR at 25. The Department has now "determined that a more detailed examination of an institution is needed before approving it for non-profit status" because the Department believes that proprietary institutions "may have greater incentives to convert to a non-profit status that exempts degree programs from the gainful employment requirements" after these additional regulatory requirements were established. *Id.* Thus, there is adequate evidence in the record to judge the reasonableness of the challenged decision, as Plaintiff concedes. Pl.'s Mot. at 13–14.

In order to comply with the APA, the Department must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection

13

between the facts found and the choice made." *Sorenson Commc'ns, Inc. v. FCC*, 659 F.3d 1035, 1045 (10th Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  Plaintiff has not clearly demonstrated that additional examples of the Department's other decisions addressing nonprofit conversion are necessary for effective judicial review of the challenged decisions in this case.

Plaintiff has not shown the extraordinary circumstances that would justify the Court going beyond the Administrative Record here, and Plaintiff's request that the Court accept the proposed materials as extra-record evidence should therefore be denied.  To the extent Plaintiff argues that the Department's final decision is arbitrary and capricious because it failed to consider some of CEHE's claims of inconsistent treatment, Pl.'s Mot. at 14–15, "[the] agency's action must be upheld, if at all, on the basis articulated by the agency itself."  *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 50).

**IV.    IF THE INSTANT MOTION IS CONSIDERED A MOTION FOR DISCOVERY TO SUPPLEMENT THE ADMINISTRATIVE RECORD, THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE IT HAS NOT DEMONSTRATED THAT CIRCUMSTANCES WARRANT SUCH RELIEF**

Plaintiff's motion briefly argues in favor of discovery "related to the Department's decision to abandon its prior practice" through evidence "of the Department's recent decisions addressing nonprofit conversion."  Pl.'s Mot. at 12.  While Plaintiff is free to submit whatever Freedom of Information Act ("FOIA") requests it chooses to the agency, it cannot use this record review case as a vehicle to conduct discovery or to circumvent the FOIA process.[2]  "When a

---

[2] Plaintiff notes that it submitted FOIA requests to the Department "months ago" but "has not received responsive documents to many of its requests."  Pl.'s Mot. at 12 n.4.  The Department has received approximately fifteen FOIA requests from Plaintiff's counsel beginning in February 2017, none of which qualified for expedited processing.  To date, the Department has produced approximately 1390 pages of documents responsive to these requests.  Seven of Plaintiff's FOIA

14

showing is made that the record may not be complete, limited discovery is appropriate to resolve that question." *Bar MK Ranches*, 994 F.2d at 740.  However, as discussed *supra*, Plaintiff has failed to make the required showing that the Administrative Record here requires supplementation.

Even if the Court thought supplementation were necessary, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Camp*, 411 U.S. at 142 (holding that review should not focus on "some new record made initially in the reviewing court").

"Plaintiff has not demonstrated that the administrative record is insufficient for the court to make a determination on plaintiff's claims, or that the information plaintiff seeks in discovery is necessary for adequate judicial review," so Plaintiff's request for discovery must be denied. *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268, 1271 (D. Colo. 1998).  Without more, "Plaintiff's request for discovery outside of the administrative record appears to the Court to be nothing more than a fishing expedition." *Strich v. United States*, No. 09-cv-01913, 2011 WL 3682757, at *5 (D. Colo. Aug. 23, 2011).

In short, Plaintiff has not met its burden for seeking discovery outside of the Administrative Record.  Accordingly, this portion of Plaintiff's motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to complete and supplement the administrative record and for leave to issue discovery to supplement the administrative record

---

requests are still open, and the Department will continue to process them in the normal course by date of receipt along with the other requests in their queuing tracks.

should be denied. Defendants respectfully request 7 days from the date of the Court's decision on Plaintiff's instant motion to Bates stamp and lodge corrected versions of the Colleges' electronic applications for change of ownership listed at Plaintiff's Ex. A, Item Nos. 5–8 in place of the versions of the Colleges' electronic applications originally included in the Administrative Record with the Court.

DATED: October 30, 2017               Respectfully submitted,

                                      CHAD A. READLER
                                      Acting Assistant Attorney General

                                      JOHN W. HUBER
                                      United States Attorney

                                      JARED C. BENNETT
                                      Assistant United States Attorney

                                      MARCIA BERMAN
                                      Assistant Branch Director

                                      */s/ Elizabeth L. Kade*
                                      ELIZABETH L. KADE (D.C. Bar No. 1009679)
                                      Trial Counsel
                                      U.S. Department of Justice
                                      Civil Division, Federal Programs Branch
                                      20 Massachusetts Avenue, N.W.
                                      Washington, D.C.  20530
                                      Telephone: (202) 616-8491
                                      Facsimile: (202) 616-8470
                                      E-mail:  Elizabeth.L.Kade@usdoj.gov

                                      *Counsel for Defendants*